PONDER, Judge.
This is a medical malpractice suit. Plaintiffs-appellants, Mr. and Mrs. Albert J. Penny, claim damages as a result of the alleged negligence of Dr. Charles L. Lee, a general practitioner. Dr. Lee’s insurer, St. Paul Fire and Marine Insurance Company, is also a defendant herein.
In April, 1971, with complaints of nausea and fatigue, Mrs. Penny, a schoolteacher, *834 saw Dr. Lee. Clinical evidence of jaundice was present and a diagnosis of viral hepatitis was made. Mrs. Penny was referred to Dr. Bruce Baer, a specialist in Gastroenterology, a sub-speciality of internal medicine.
Dr. Baer confirmed the diagnosis of viral hepatitis. On April 2, 1971, the SGOT (serum glutamic oxalacetic transaminase) oxalacetic enzyme test indicated 770 units and the SGPT (serum glutamic pyruvic transaminase) pyruvic test indicated 980 units. An upper normal unit of SGPT is 40 units.
The SGOT dropped to 62 by April 23rd. However, Mrs. Penny suffered a flare-up in mid-May and by May 22nd her SGOT was 825. On June 4th the SGOT had subsided to 67 and on July 1st it was normal. Her SGOT remained normal through November 10, 1971, with her next scheduled test due on February 7,1972.
On December 21, 1971, Mrs. Penny returned to Dr. Lee complaining of a sore throat. Dr. Lee noting a sore throat, stopped sinuses and general congestion, treated her with injections of Linocin with a small amount of Aristocort, Ornade and a prescription calling for a four or five day supply of ahtibiotic Ilosone pills, to be taken three or four times daily.
Mr. and Mrs. Penny testified that she began feeling ill on Christmas Eve. She experienced slight abdominal pain, vomiting and nausea on Christmas Day. On the next day her throat had not improved, she was still nauseated and a rash developed on her buttocks. She went to the emergency room of Baton Rouge General Hospital and was seen by Dr. W. T. Brown. A throat culture was taken and the result was sent to Mrs. Penny’s family physician, Dr. Vance Byars.
Dr. Byars saw her five days later on December 31st. Concerned about the rash, he made an appointment for her with Dr. Judith Patrick, a specialist in the field of Dermatology. Mrs. Penny saw Dr. Patrick on January 5th and 7th. Dr. Patrick, recognizing the rash as reflecting a drug reaction, gave her two injections of Cele-stone, prescribed a short term course of oral Decadron and recommended some Benadryl for itching.
Mrs. Penny testified that the rash had almost disappeared between the middle and end of January, 1972, but that the nausea and fatigue continued into February. She stated that she missed much school in January. Mr. Penny testified that he substituted for his wife in January, once five days in a row.
On February 8, 1972, she went to see Dr.^Baer for her regularly scheduled liver tests. Her SGOT was remarkedly abnormal at 1480 units. She had hepatitis. Dr. Baer hospitalized her the next day for further evaluation. On February 16th Mrs. Penny was sent home. She was told to stay in bed for six to eight weeks.
On April 19, 1972, she saw Dr. Byars again. Supposedly worried about potential ill effects of an accidental pregnancy, Mrs. Penny inquired about having herself sterilized. Dr. Byars advised her against sterilization and suggested that she not return to teaching for about one year. Still, she went to Dr. David McKowen, a specialist in the fields of Gynecology and Obstetrics, and arranged for the sterilization. Dr. McKowen testified that because of Mrs. Penny’s hepatitis, she could not safely take birth control pills. However, he stated that Mrs. Penny did not ask about alternatives. When he brought up the possibility of a vasectomy, she stated that she did not want her husband subjected to that procedure. Dr. McKowen further testified that at one time the Pennys told him they were not particularly desirous of having children. A tubal ligation was performed in May, 1972.
The 1971 edition of the Physician’s Desk Reference published by drug manufacturers and the American Medical Association’s book on drug evaluation both state *835 that Ilosone is contraindicated for patients with pre-existing liver conditions. On the theory that Dr. Lee was under a legal duty not to prescribe Ilosone to Mrs. Penny in view of her past history of liver problems, and that the breach of this duty caused drug induced hepatitis, plaintiff instituted this suit.
The lower court found that the plaintiffs failed to prove by a preponderance of the evidence that there was a causal connection between the medication prescribed by Dr. Lee on December 21, 1971, and the hepatitis diagnosed on February 8, 1972, and dismissed plaintiff’s suit. Plaintiffs appeal that decision.
The question that is dispositive of this suit is whether the hepatitis diagnosed in February was drug induced or a flare-up of the viral hepatitis Mrs. Penny had the previous April through June. Much medical testimony was elicited with regard to this issue.
Dr. Edward Boagni, an expert in the field of anatomical clinical pathology, was called by the plaintiffs. He examined the biopsy slide taken in February, 1972. He stated that Ilosone can cause symptoms of hepatitis within two to twenty-one days of its injection into the body system. Many cases of drug induced hepatitis cannot be differentiated from viral hepatitis by biopsy, including those induced by Ilosone. However, it was his opinion that once the drug is removed, then the cholestasis (a stoppage of the flow of bile) would begin to subside and this took five days to two weeks. (The drug had been removed slightly over five weeks before.) A high level of SGOT (1480 units) was also indicative of viral hepatitis. The inflammatory response to the drug induced cholestatic condition is usually eosinophilic leukocyte (a cellular mass in blood readily stained by the drug eosin). He found no eosinophils. Dr. Boagni concluded that “the probability is that this would be a viral origin.”
Plaintiffs contended that the basis of Dr. Boagni’s conclusion, that of their own witness, was erroneous, on the basis that cortisone injections given to plaintiff by Dr. Patrick would have done away with the eosinophils. Dr. Boagni answered that “it is possible but in my opinion not probable.” He dismissed plaintiffs drug rash as coincidental and reasserted his opinion that “on probability alone I would still stick to a viral etiology.”
Dr. Byars was called by the plaintiff and was asked his opinion of the cause of the hepatitis diagnosed in February, 1972. He testified that he “would assume that some drug or some other agent had caused an exacerbation or recurrence of her illness, and with the immediate history that I had about that time, the most likely three drugs were either Lincocin, Ilosone and codeine.” He admitted that he stated in a letter of September 12, 1972, that “many factors can influence liver functions in drug actions. Consequently, it will be difficult to state that these drugs could be definitely responsible for any exacerbation of hepatitis such as occurred in Mrs. Penny’s case in February of 1972.”
Dr. Baer, Mrs. Penny’s treating physician in April of 1971 and February, 1972, testified that it was his opinion that the Il-osone had nothing to do with the flare-up of the hepatitis in February, which he unequivocally characterized as viral. There are two types of jaundice, obstructive jaundice with blockage of bile ducts (a cholestatic-type jaundice) and jaundice secondary to acute damage to the liver tissue. Jaundice that is secondary to Ilosone is predominately cholestatic, with a marked elevation of the alkaline phosphatase. In obstructive jaundice (drug induced) the transaminase is usually below 400 units, and this propensity carries a diagnostic accuracy of approximately 85%. Dr. Baer .stated that this particular case “was fairly clear-cut — we had a 1480 transaminase, tremendous elevation — we felt quite confident from this that we were dealing with a relapse of the hepatitis and not dealing with an entrahepatic cholestasis.” Later, he also stated “If you had a patient with *836 Ilosone hepatitis and you did a biopsy on them three weeks later and the biopsy was normal, you would certainly not expect to see clinically on the same day a serum transaminase of 1560.” Dr. Baer knew of no cases where Ilosone had led to chronic liver disease. Also, it was his opinion that upon withdrawal of a drug causing a liver problem, the problems disappeared rather rapidly.
Mrs. Penny testified that Dr. Baer told her that the Ilosone caused her liver condition in February, 1972. Dr. Baer denied telling her this and stated that if that had been his opinion he would have noted it in the hospital record. The record contained no such diagnosis.
The lower court stated it has “no alternative but to rely on the sworn testimony of expert witnesses such as Dr. Boagni and Dr. Baer, who are recognized experts in their respective fields. In difficult cause and effect issues such as the one presented here, their testimony must prevail over general printed statements of medical authorities, particularly when the experts agree with the general principles but testify adverse to the plaintiffs’ position in a particular case, giving logical and plausible bases and foundations for their opinions.
“In technical fields such as medicine, and particularly in deciding issues the resolution of which depend on complex and difficult diagnosis of complex diseases, this Court must rely and in this case is relying heavily on the testimony of these two specialists. The Court was particularly impressed with the qualifications of Dr. Baer and the manner in which he presented his testimony.
“Counsel for plaintiffs has, both by questions and comment during the trial and by written brief, asked the Court to conclude that the experts who testified contrary to plaintiffs’ interest were not being truthful and were attempting to mislead the Court to aid a fellow member of the medical profession. This Court is unable to subscribe to any such notion.”
We agree and adopt that reasoning as our own. We agree too, with the lower court that plaintiffs have not fulfilled their burden in proving that the cause of the February, 1972, hepatitis was Ilosone. Therefore, discussion of whether Dr. Lee was negligent in prescribing the contraindicated drug is not necessary.
Affirmed.
Appellant to pay costs of this appeal.